IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEACERO, S.A. de C.V.,               )
                                     )
              Plaintiff,             )
                                     )   Civil Action No. 05-1016
       v.                            )
                                     )   Chief Judge Ambrose
CORE FURNACE SYSTEMS CORP.,          )   Magistrate Judge Caiazza
f/k/a TECHINT TECHNOLOGIES           )
INC.,                                )
                                     )
              Defendant.             )

## MEMORANDUM AND ORDER

### I.   MEMORANDUM

For the reasons that follow, the Defendant's Motion to Dismiss will be granted and this case dismissed with prejudice.

The Plaintiff ("DeAcero") is a Mexican company that makes steel products, and the Defendant ("Core") is a Pennsylvania company that, among other things, provides engineering and equipment installation services. *See generally* Compl. (Doc. 1) at ¶¶ 2-5.[1]  In July 2000, the parties entered into a letter agreement establishing a two-phase project for improving DeAcero's mill in Saltillo Coahuillo, Mexico ("the Mill").  *See generally id.* at ¶¶ 2, 4, 6.  Phase one contemplated Core's

---

[1] Core's predecessor-in-interest was Techint Technologies Inc. ("Techint"). *See generally id.* at caption (stating Core was "f[ormerly]/k[nown]/a[s]" Techint); *id.* at ¶ 5 (alleging that, at relevant times, Core was "then called Techint"); *and id.* at ¶ 18 ("Techint and Core are each other's alter egos"). The distinction of identity between these two entities, to the extent it existed, is immaterial for the purposes of the analyses below.  Accordingly, the court's references to "Core" should be understood to include Techint where appropriate.

generation of "a set of engineering drawings" for improvements to be made on the Mill's furnace. *See id.* at ¶ 6. Phase two "was an option offered to DeAcero to purchase the balance of engineering works and the equipment and services" described in Core's proposal. *See id.*

Core completed, and was paid for, the engineering drawings addressed in phase one. *See id.* at ¶ 8. Dissatisfied with the work product, however, DeAcero declined Core's offer regarding phase two. *See id.* Instead, the company retained the services of Danieli & C. Officine Meccaniche S.p.A. ("Danieli"). *See id.* at ¶¶ 5, 8. Although Danieli purportedly "developed its own engineering drawings and methods," Core has asserted that DeAcero/Danieli misappropriated trade secrets and/or technology in connection with the project. *See generally id.* at ¶¶ 8, 9, 11-13.

What has followed is an onslaught of legal actions in a variety of tribunals around the globe. *See generally, e.g., id.* at ¶ 11 (discussing Core's August 2003 claim with Federal District Attorney in Mexico, alleging misappropriation of trade secrets); *id.* at ¶ 12 (Core's September 2003 action in Mexican Institute of Industrial Property, for infringement of Mexican patents); *id.* at ¶ 13 (Core's initiation of arbitration proceedings in Pittsburgh, Pennsylvania in October 2003); *and id.* at ¶ 16 (DeAcero and Danieli's December 2003 claims before

Italy's Court of Trieste).  The only proceeding relevant for the
purposes of this discussion, however, is the arbitration in
Pittsburgh ("the Arbitration Proceedings" or "the Arbitration").
*See generally id.* at ¶ 13.

As referenced above, Core initiated the Arbitration on
October 31, 2003.  *See id.*; *see also* Ex. 2 to Doc. 22 (Core's
"Demand for Arbitration" under American Arbitration Association's
Construction Industry Arbitration Rules).  On December 10, 2003,
DeAcero filed an "Answering Statement" asserting, among other
things:

> The contract for the preliminary engineering
> services [*i.e.*, phase one as described
> above], does not contain an arbitration
> provision.  The arbitration provision cited
> by [Core] . . . is taken from the proposal
> that was associated with the second offer
> [*i.e.*, phase two], but that offer was never
> accepted by DeAcero.  Therefore, there is no
> agreement to arbitrate.  <u>Nevertheless,
> DeAcero will arbitrate this dispute with
> [Core] as a submission under Rule 5 of the
> Arbitration Rules and Procedures</u>, but
> reserves the right to object to jurisdiction
> in Pennsylvania.

*See* DeAcero's Answering Statement (Ex. 3 to Doc. 22) at 3
(footnote omitted, emphasis added).[2]

---

[2] As recognized by DeAcero's counsel, Rule 5 provides:

> Parties to any existing dispute may commence an arbitration under
> these rules by filing at any office of the AAA two copies of a
> written submission to arbitrate under these rules, signed by the
> parties.

*See* AAA Arb. Rules Commercial Arbitration Rules & Mediation Procedures (Jul.
1, 2003); *see also* DeAcero's Mem. (Doc. 5) at 28 (quoting same).

The Answering Statement was signed on behalf of DeAcero by its counsel.  *See id.* at 6.

On September 29, 2004, and after engaging in substantial advocacy in the Arbitration Proceedings,[3] DeAcero filed an Amended Answering Statement that omitted its prior agreement to arbitrate.  *See* Ex. 17 to Doc. 22 at 3; *see also* Compl. at ¶ 14. The same day, DeAcero filed a motion to dismiss for lack of jurisdiction, arguing among other things that it never agreed to arbitrate.  *See* Ex. 18 to Doc. 22 (filed under seal) at ¶¶ 10-11 (arguing same).  In an Order dated November 19, 2004, the arbitrators denied DeAcero's motion to dismiss.  *See* Ex. 19 to Doc. 22.[4]

---

[3]  Core's Motion to Dismiss identifies the efforts taken by DeAcero between the time it agreed to arbitrate in December 2003 and then changed its mind in September 2004.  *See* Core's Mot. at ¶¶ 20-30 (identifying DeAcero's unsuccessful litigation of its "Motion to Dismiss Or Stay," denied by arbitrators on June 29, 2004; DeAcero's service of discovery on Core and Core's responses thereto; and Core's service of discovery on DeAcero and DeAcero's responses thereto); *cf. also* Exs. attached to Core's Mot. (providing evidentiary support regarding same).

[4]  In the Arbitration Proceedings, DeAcero took the position that it had agreed to arbitrate with Core, not Techint.  *See* Ex. 18 to Doc. 22 at ¶ 10 ("DeAcero never agreed to arbitrate with Techint").  This theory would appear difficult to square with the allegations herein, let alone in the Arbitration. *See* discussion *supra* (Core was "f[ormerly]/ k[nown]/a[s]" Techint and they are "each other's alter egos"); *compare also* Core's Demand for Arbitration (identifying claimant as Core, "f/k/a Techint") *with* original Answering Statement ("DeAcero will arbitrate this dispute with <u>Techint</u>") (emphasis added); *cf. also generally* <u>Whiting v. Krassner</u>, 391 F.3d 540, 543-44 (3d Cir. 2004) (doctrines like judicial estoppel "preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions") (citations and internal quotations omitted), *cert. denied*, -- U.S. --, 125 S. Ct. 2938 (2005).  In any event, the point remains that DeAcero first agreed to arbitrate, later disclaimed the agreement, and then litigated and lost the issue of arbitrability in the Arbitration Proceedings.  *See* discussions *supra*.

Over eight months later DeAcero filed this lawsuit, again
disclaiming its agreement to arbitrate and seeking to compel the
litigation of Core's claims in federal court. *See generally*
Compl. In a pending Motion to Stay the Arbitration, DeAcero
summarizes its position:

> DeAcero seeks a determination from the Court
> that . . . [the] 'trade secrets' alleged by
> Core [in the Arbitration are], in fact, not
> . . . trade secret[s] . . . but [were]
> disclosed or made possible by publication in
> an issued patent or patent application.
> Core's claims . . . are therefore actually
> claims of patent infringement masked as
> claims for misappropriation of trade secrets
> and breach of contract.

*See* DeAcero's Mem. (Doc. 5) at 17; *see also generally* DeAcero's
Opp'n Br. (Doc. 52) at 1 ("[i]t is hornbook intellectual property
law that information disclosed in a patent is no longer and can
never thereafter be a 'trade secret'"). DeAcero prays that the
District Court shut down the arbitration proceedings and enter
judgment in its favor on Core's "supposed trade secret
alleg[ations]." *See generally* Compl. at final Wherefore clause,
para. A.

The first problem with DeAcero's position, in this court's
mind, is one of jurisdiction. *See generally* Liberty Mut. Ins.
Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995)
("federal courts have an ever-present obligation to satisfy
themselves of their subject matter jurisdiction") (citations

-5-

omitted). Simply stated, the company has identified no basis for

the court's exercise of federal question jurisdiction.[5]

All the Complaint says regarding jurisdiction is as follows:

> The subject matter of Core's claims in the
> Arbitration . . . is dependent upon Core
> owning . . . 'trade secrets' . . . .
> However, under United States Patent Law,
> . . . Core did not own or control rights in
> any trade secrets . . . because [they] were
> effectively or fully disclosed in [Core]'s
> . . . [p]atents.
>
> Because the alleged trade secrets . . . have
> been disclosed in [U.S. p]atents, such trade
> secrets -- to the extent they ever existed --
> were extinguished with the publication of the
> [patent] applications . . . . Core's claims
> in the Arbitration are, therefore, actually
> claims of patent infringement masked as
> claims for misappropriation of trade secrets
> and breach of contract. Properly pled, these
> claims arise under the United States Patent
> Act . . . . This Court therefore has
> original jurisdiction under [said Act].

See id. at ¶¶ 21-22 (emphasis added).

As just seen, DeAcero's purported "federal question" seeks

to recast Core's state law claims for trade secret

misappropriation and breach of contract as federal patent law

claims, and then compel their resolution here. If any authority

for this approach exists, it is identified in neither DeAcero's

---

[5] The pleadings' reference to diversity jurisdiction is superfluous. *Cf.*
Compl. at ¶ 23. DeAcero has identified no state law claims, and its arguments
for federal court intervention all relate to U.S. patent law. *See* discussion
immediately *infra*; *cf. also generally* Liberty Mut. Ins. Co. v. Treesdale,
Inc., 419 F.3d 216, 228 (3d Cir. 2005) (under *Erie* doctrine, "federal courts
sitting in diversity apply state substantive law") (citation and internal
quotations omitted, emphasis added).

-6-

pleadings nor its voluminous legal briefing.

What the Complaint does make clear, however, is DeAcero's understanding that it seeks declaratory relief. *See, e.g., id.* at various "Wherefore" clauses (seeking "declarations"). Under the law, the Declaratory Judgment Act ("the DJA") allows "a party [that] traditionally would be a defendant [to] bring a preemptive suit in federal court, thus accelerating the claim against it." *See* Discover Bank v. Vaden, 396 F.3d 366, 371 (4th Cir. 2005). Even had DeAcero invoked the DJA, however, it is far from clear that such an action would be appropriate where, as here, the substance of the underlying suit already is being litigated in arbitration. *Compare id.* (under DJA, putative defendant files "preemptive suit" and federal court "hypothesize[s] what a well-pleaded complaint . . . would look like") (emphasis added) *with* discussions *supra* (indicating that actual claims for misappropriation of trade secrets and breach of contract have been brought in Arbitration Proceedings); *cf. also* 22A Am. Jur. 2d Declaratory Judgments § 123 (Aug. 2005) ("[d]eclaratory judgment may be denied where the question involved is already the subject of a pending arbitration proceeding") (citation omitted).

Even assuming DeAcero had or could support its unorthodox jurisdictional approach, moreover, the law recognizes that "if, but for the availability of the declaratory judgment procedure,

-7-

the federal claim would arise only as a defense to a state
created action, jurisdiction is lacking." *See id.* (citations and
internal quotations omitted, emphasis added). Undoubtedly,
DeAcero raises federal patent law as part of its defense to state
law claims, and the above rule therefore counsels against the
exercise of jurisdiction. *See id.* At the very least, DeAcero's
theory hinges upon legal and factual presuppositions that render
jurisdiction inappropriate under the well-pleaded complaint rule.
*See* Board of Regents v. Nippon Tel. & Tel. Corp., 414 F.3d 1358,
1365 (Fed. Cir. 2005) (rejecting argument that state law claims
"[arose] under" federal patent law, including assertion that
plaintiff's "trade secret claims were extinguished when it filed
[a] patent application"; while Supreme Court has "distinguished
between protection afforded inventors under federal patent laws
and state trade secret laws and held that states [can]not provide
trade secret protection that conflict[s] with the federal patent
scheme," it did not hold "that patent laws preempt a patentee's
right to recover under theories sounding in either contract or
tort for misappropriation of property protected under state law
at the time of its misappropriation").

     In the end, DeAcero's desire to litigate Core's claims in
federal court must yield to Core's intentions as "the master of
[its underlying] claim[s]." *See* Beneficial Nat. Bank v.

-8-

<u>Anderson</u>, 539 U.S. 1, 12-13 (U.S. 2003).[6]  For this and all of
the other reasons stated above, DeAcero's allegations are
insufficient and the court lacks subject matter jurisdiction.

     Even if DeAcero could establish jurisdiction, its claims
would get no further.  Under the law, the company has waived its
objections to moving forward with the Arbitration.

     The court in <u>Mays v. Lanier Worldwide, Inc.</u> succinctly
summarizes the standards relied upon herein:

> [C]ourts have uniformly held that to the
> extent a party is entitled to challenge the
> validity of an agreement to arbitrate, <u>the
> time to raise that issue is before the matter
> goes to arbitration, not after</u>. . . .
> Otherwise, a party could hold back, await the
> outcome of the arbitration, and then blithely
> render it null simply by challenging the
> validity of the proceedings. . . .

---

[6]  The <u>Anderson</u> Court described the great deference afforded under the well-
pleaded complaint rule:

> [For the purposes of jurisdiction, <u>i]t does not suffice that the
> facts alleged in support of an asserted state-law claim would also
> support a federal claim</u>.  The [well-pleaded-complaint] rule makes
> the plaintiff the master of the claim; he or she may avoid federal
> jurisdiction by exclusive reliance on state law. . . .  <u>Nor does
> it even suffice that the facts alleged in support of an asserted
> state-law claim do not support a state-law claim and would only
> support a federal claim</u>.  <u>Jurisdiction may not be sustained on a
> theory that the plaintiff has not advanced</u>. . . .  [Nor does] a
> federal court . . . have original jurisdiction over a case in
> which the complaint presents a state-law cause of action, but also
> asserts that federal law deprives the defendant of a defense he
> may raise, . . . or that a federal defense the defendant may raise
> is not sufficient to defeat the claim. . . .  [T]he rejection of a
> federal defense as the basis for original federal-question
> jurisdiction [even extends to a] defense . . . of [alleged]
> federal pre[]emption.

<i>See id.</i> (numerous citations and internal quotations omitted, emphasis added).

> Thus, . . . <u>the failure to challenge</u>
> <u>arbitrability in a timely fashion and</u>
> <u>subsequent participation in the arbitration</u>
> <u>proceedings will result in the waiver of the</u>
> <u>right to object to the fact of the</u>
> <u>proceedings</u>.

*See id.*, 115 F. Supp.2d 1330, 1340 (M.D. Ala. 2000) (citations
and internal quotations omitted).

The legal principles just cited strongly support a finding
of waiver here.  Core initiated the Arbitration on October 31,
2003.  *See* discussion *supra*.  Less than two months later, DeAcero
agreed in its signed Answering Statement to "arbitrate this
dispute . . . as a submission under Rule 5 of the Arbitration
Rules and Procedures."  *See id.*[7]  Then, after engaging in nine
months of advocacy in the Arbitration, DeAcero decided it no
longer wanted to arbitrate.  In November 2004, the arbitrators
denied DeAcero's challenge to arbitrability, and the company
waited yet another eight months before seeking relief here.  *See*
discussions *supra*.

---

[7]  This conduct, on its face, defeats DeAcero's arguments regarding the
"signed writing" requirement in Rule 5.  *Compare* DeAcero's Mem. (Doc. 5) at 28
*with* discussion *supra* in text (highlighting company's signed agreement to
arbitrate under same Rule); *cf. also generally* <u>Nghiem v. NEC Elec., Inc.</u>, 25
F.3d 1437, 1440 (9th Cir.) (even where technical writing requirements are not
met, "[a]n agreement to arbitrate an issue need not be express" and "may be
implied from the conduct of the parties") (citations and internal quotations
omitted, alteration in original), *cert. denied*, 513 U.S. 1044 (1994).

After twenty months of arbitration, including the selection

of arbitrators,[8] DeAcero's litigation of two unsuccessful motions

to dismiss, and its participation in substantial discovery

efforts, the company asks the court to nullify these efforts and

exert jurisdiction over Core's claims.  DeAcero is too late, and

it has through its conduct waived any objections to the

Arbitration.  *See* discussions *supra*.

In the undersigned's opinion, the facts and circumstances

discussed above present a compelling case of waiver.  Thus, the

court sees little utility in comparing and contrasting this case

with the fact-intensive analyses of the other courts that have

found or declined to find a waiver.  It generally bears noting,

though, that the lack of a final decision by the arbitrators is

immaterial.  *See, e.g.*, Nghiem, 25 F.3d at 1440 ("even though

[the objector] attempted to deny the arbitrator's authority

before a decision was issued, [i]t would be unreasonable and

unjust to allow [him] to challenge the legitimacy of the

arbitration process, in which he had voluntarily participated

over a period of several months") (citation and internal

quotations omitted, some alterations in original).  This is

particularly true here, where the parties have expended

---

[8]    *Compare* Doc. 22 at ¶¶ 20-21 (Core's uncontested allegations regarding
DeAcero's active participation in arbitrator selection process) *with* 1 Domke
on Commercial Arbitration § 23:9 (Aug. 2005) ("[a]ny challenge . . . against
the enforcement of the arbitration agreement will be waived when [the
objecting] party participates in the selection of arbitrators").

-11-

significant time and energy litigating relatively complex issues
in a seemingly high-stakes dispute.

Finally, the only case cited by DeAcero that meaningfully
addresses waiver concluded that the litigant there had failed to
engage the arbitration process in any meaningful way.  *See*
DeAcero's Opp'n Br. (Doc. 52) at 22-23 (citing In re Miller,
Inc., 1998 WL 193213, *3 (S.D.N.Y. Apr. 21, 1998), *aff'd*,
173 F.3d 844 (2d Cir. Mar. 9, 1999) (table), *cert. denied*,
528 U.S. 821 (1999)); *see also* Miller at *3 ("minimal
participation, amounting for the most part to efforts to postpone
or delay arbitration, does not mean that the [objector] waived
its right[s]") (citation and internal quotations omitted).  And
though DeAcero attempts to paint its participation in the same
light, the company's contentions ring hollow.  *Compare* Compl.
at ¶ 17 ("the Arbitration is still procedurally in its early
stages and very few activities have taken place") *with*
discussions *supra* (discussing substantial litigation efforts
taken during twenty months between filing of Arbitration and this
lawsuit).

For all of the reasons stated above, the court enters the
following:

## II.  ORDER

AND NOW, on this ____21st____ day of ____Nov.____, 2005, IT IS

HEREBY ORDERED that Core's Motion to Dismiss (**Doc. 22**) is

**GRANTED**, all remaining Motions and requests are **DENIED AS MOOT**,

and DeAcero's lawsuit is **DISMISSED WITH PREJUDICE**.

The Clerk is directed to mark this case closed.

Donetta W. Ambrose
Chief United States District Judge

cc:

Francis X. Caiazza
U.S. Magistrate Judge

David J. Armstrong, Esq.
John W. Burns, Esq.
Dickie, McCamey & Chilcote
Two PPG Place, Suite 400
Pittsburgh, PA  15222-5402

Joseph T. McLaughlin, Esq.
Richard A Martin, Esq.
Kathleen M. Scanlon, Esq.
Heller, Ehrman
Times Square Tower
Seven Times Square
New York, NY  10036-6524

John S. Skilton, Esq.
Heller, Ehrman
One East Main Street, Suite 201
Madison, WI  53703-5118

David G. Oberdick, Esq.
Andrew L. Noble, Esq.
Meyer, Unkovic & Scott LLP
1300 Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222